Our third case for argument today is United States v. Richardson. Mr. Minch, good morning, your honors. May it please the court, Theodore J. Minch on behalf of appellant Daquan Richardson in this case. Mr. Richardson was convicted following a two-day trial of possession of a firearm, illegal possession of a firearm under 922g. Really the sole issue that I wish to address this morning is the issue as to whether or not there was ample evidence in this case to convict Mr. Richardson of that offense. Do you agree that that issue was not raised below? We don't necessarily agree that that issue was not raised below. It wasn't, if the court's question is... So it matters in terms of what the standard of review is, and I looked through everything. There was no Rule 29 followed, there was no challenge to the sufficiency of the evidence on the constructive possession anywhere, which means we look at this as a manifest miscarriage of justice committed. That's correct, your honor. So do you agree that the standard that we look at this with is whether or not there was a manifest miscarriage of justice? I do, because there were no Rule 29 motions filed. I do agree with that, your honor. So in essence, in this case, the situation as to Mr. Richardson was whether or not there was a constructive possession case that was alleged by the government. A firearm was found under the passenger seat of a vehicle that was owned by an individual who was Mr. Richardson's girlfriend. Mr. Richardson was the sole occupant of the vehicle, but again, the vehicle was owned by his girlfriend. Mr. Minch, is there anywhere in your brief or your reply brief where you acknowledge the standard of review and attempt to show that it is satisfied? No, your honor. I read your brief as simply saying, well, I say my client is innocent. And after the United States relied on the fact that there was no Rule 29 motion, your reply brief simply ignored the problem and re-argued the same point as if there were no procedural difficulty. You see what difficulty that leaves us in. You're behind the eight ball procedurally. Yes, your honor. And your briefs have never even attempted to show how you can meet the essential standard. Yes, your honor. I do understand that, and I do appreciate that issue. Essentially, your honor, we're still left with the proposition of whether or not the conviction, we argue that it did not. But the standard, again, is different. It's was there a manifest miscarriage of justice when the jury found the constructive possession element? Yes, understood, your honor. And we believe that given the evidence in this case, there was a manifest miscarriage of justice. There was no, we set forth in our brief the issues that were raised at trial below with regard to the evidence. There's no DNA. There's no fingerprints. There's no admissions on behalf of Mr. Richardson. But we don't look at what there isn't. We look at what there is. And he is riding alone in a car with a loaded gun under the passenger seat that is within his reach. When he's pulled over for a minor driving violation, he doesn't give his name. The officers have to wait until they are looking through the car and inventorying it to find his name on a pay slip. They run and they find out who he is and that he's a felon. And when they ask if he has a gun permit in his first responses, the gun's not mine. And then he says to his girlfriend in a recorded jail play, jail call, that the gun was, quote, in the same place it always is. How could that possibly be a manifest miscarriage of justice? Well, Your Honor, we understand, again, that the test is manifest miscarriage of justice. We understand that the court needs to look at what is here in that light. But the statements that were attributable to Mr. Richardson at trial, and I don't mean to Mr. Richardson didn't acknowledge that he knew the gun was under the seat. It was after he was shown the gun and then he said that gun is not mine. That's not what the evidence was at trial. We have to take the evidence in the light most favorable to the government. And you were free to argue at trial whatever spin on the evidence or however you wanted to put it in the light most favorable to your client. But based on viewing it in the light most favorable to the government, he was not shown the gun. The officer specifically testified that they didn't show him the gun, and instead they said to him, do you have a gun permit? And he said that gun's not mine. It's my girlfriend's. Well, I believe that there was also evidence in the record at trial that there was a call out with regard to a firearm being found before he was even asked. Again, you're asking us to reweigh the evidence and to view that in the light most favorable to your client, which is not what you do on a sufficiency challenge in the first place. And when you've failed to raise it below, it's certainly not what you do on a manifest miscarriage of justice standard. Understood, and I appreciate your position on that. Again, we believe that the evidence in this case, even the evidence that was present, the finding of guilt in this case results in a manifest miscarriage of justice as to Mr. Richardson, and we would ask the court to overturn. Thank you. Thank you, Mr. Minch. Mr. Olson. Good morning. May it please the court, for many of the reasons already mentioned by your honors, there is not only sufficient evidence to support the verdict in this case, but certainly not a miscarriage of justice. I also note that on reply, there is no further argument on the other points raised by appellant. Can I ask you something about that? I'm curious as to what documents the district court relied upon in determining that the defendant was an armed career criminal. Yes, Your Honor. The district court relied on the Shepard documents, which in this case was the original verified complaint submitted at docket two on the district court's docket, which was superseded by indictment later on. The second document was the indictment in the state court action where his three prior violent felonies were alleged. Those two documents were the Shepard documents in this case and were also summarized in the PSR to which appellant raised no objection as to the factual statements therein. Mr. Richardson also, as I mentioned in the briefing, has not cited to the court's recent decision in Wooden, contesting that there were in fact three prior violent felonies that subjected him to an enhanced sentence and his adjustment for obstruction of justice certainly satisfies clear error review. We would rest on our briefing. Mr. Olson, I have a question for you, please, about the obstruction of justice. It looks like the two levels were given because Mr. Richardson attempted to get his girlfriend to lie about whether or not they lived together. Is there a materiality element to that? I know if a defendant takes a stand and lies and the obstruction is given, it has to be that he lied about something material. But if you're trying to influence somebody else to testify in a certain way, is there any materiality element to that? Yes, Your Honor. It's material to the extent that it goes to the many different facts that supported Mr. Richardson's connection to the gun. Does it have to be material? As a matter of law, our case law doesn't seem crystal clear on whether tampering with a witness, attempting to influence a witness, requires that materiality element. The obstruction of justice enhancement itself doesn't include a materiality element. We have said when a defendant perjures himself, there's materiality, but this isn't that situation. So the first question is, as a matter of law, is materiality required? No, Your Honor. It's not in the language of the sentencing guidelines. It's not clearly stated in the comments. And as you pointed out, I'm not aware of a case that requires it to be so. The guidelines language talks about unlawfully influencing a witness directly or indirectly or attempting to do so. Because if it is required, how would attempting to get her to lie about where they lived be material here? It would—it wasn't the most material fact he could have affected in this case. That's not the standard. But it does go to the many different factors that go to his connection to the gun. And proving connection to the gun, in this case, the state or the government relied upon personal objects in the vehicle, relied on the fact that he lived with his girlfriend, relied on the fact that his pay stub was found in close proximity to the gun. But his fact that he was living with his girlfriend at the time of the possession is yet another fact. And so to the extent that connection to a gun as an element of constructive possession is a material fact, his living with his girlfriend at the time was material in that kind of subcategory sense of the term. If there are no further questions, the United States would rest upon— I see none. Thank you. Thank you, Your Honor. Anything further, Mr. Mitch? We have no further questions. Well, thank you very much. The case is taken under advisement.